**UNITED STATES DISTRICT COURT**
**SOUTHER DISTRICT OF NEW YORK**
_____

UNITED STATES OF AMERICA

Plaintiff,

v.                                                                  Docket No.: 19-Cr.-646 (AJN)

**ARMIN DE GOORTE,**

Defendant.

_____

### SENTENCING MEMORANDUM ON BEHALF OF ARMIN DE GOORTE

     Through counsel, Armin De Goorte ("Mr. De Goorte") files the following Sentencing Memorandum setting forth all factors the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

     In this case, the Sentencing Guidelines recommend a range of imprisonment from 63 to 78 months. Mr. De Goorte submits this Sentencing Memorandum in an effort to advise the Court about his life, his family circumstances, and the circumstances that have brought him to this sentencing.  Mr. De Goorte requests a variance sentence of time served (equal to approximately three months incarceration) followed by post release supervision. When considering Federal Sentencing, United States Supreme Court Justice Anthony Kennedy has stated that, "our resources are misspent, our punishments too severe, our sentences too long."[1]

     It is, as this Court is aware, incumbent upon the Sentencing Court to, "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States,* 518, U.S. 81, 113 (1996).

     Mr. De Goorte believes that a sentence of time served is sufficient, but not greater than necessary to comply with sentencing directives of 18 U.S.C.  § 3553(a).

### SUMMARY OF ARMIN DE GOORTE'S BACKGROUND AND HISTORY

     Mr. De Goorte entered a plea of guilty before the Court on February 13, 2020, to Counts One, Three, Four, and Five of superseding indictment (S1) 19 Cr.646.  Counts One and Five

---

[1] Justice Anthony Kennedy, Speech at the American Bar Association Annual Meeting (August 9, 2003).
https://www.propublica.org/documents/item/325931-dcom.

each charge the defendant with wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2.  Counts Three and Four each charge the defendant with bank fraud, in violation of Title 18, United States Code, Sections 1344 and 2.  At nearly 40 years old, Mr. De Goorte has no prior criminal history. His conduct in this matter was not motivated by greed or the desire to live a lavish lifestyle.  Rather, his conduct is indicative of a combination of fear, lack of intelligent thought, and a refusal to accept reality.  As detailed below, his arrest and the consequences flowing therefrom have had a profound impact on Mr. De Goorte and forced him to open his eyes and face reality.

Armin De Goorte was born Osama Ahmed Abdellatif El Mokadem, on April 17, 1980, in Cairo, Egypt.  Mr. De Goorte legally changed his name on February 28, 2013, in the Civil Court of the City of New York. *See Presentence Investigation Report ¶ 77 and Exhibit D.*  He is the oldest of five children born to Ahmed Abdellatif, his father who passed away in 2016, and Nena El Mokadem, his mother who is 75 years old and still lives in Cairo, Egypt. His father was a lifelong military man who served in the Egyptian military as an army consultant, and his mother stayed at home to raise their children and manage the household.  Mr. De Goorte has four siblings: sister Mahsen Abdellatif who lives in Alexandria, Egypt, and works as a teacher; sister Nadia Abdellatif who lives at home with their mother; sister Henin Abdellatif who lives in Cairo, Egypt; and brother Mohamed Abdellatif, an engineer who lives in Dubai.  Mr. De Goorte had a good childhood with no extraordinary issues.  He received his college degree in Egypt before entering the U.S.

Mr. De Goorte came to the U.S. in 2005, on a diplomat visa, for a United Nations internship.  Other than an uncle and cousins in New Jersey, Mr. De Goorte had no had no family or friends in the United States when he entered, and spoke minimal English, which made his integration into American society difficult.  After completing his U.N. internship, he earned a living by operating Olympic Travel, a computer software travel agency, from his apartment, catering predominantly to an Egyptian and other Middle Eastern clientele.

Mr. De Goorte currently lives with his fiancé, Heather Dickerson, in a rent-stabilized apartment in Greenwich Village, Manhattan, where he has resided for almost 15 years.

In 2019, Mr. De Goorte created a digital learning platform for a new company he called "Global "Teach," which aims to help immigrant children learn English.  This brainchild of Mr. De Goorte stems from his own experience and tribulation as an immigrant struggling to speak the language of a new country and to fit in.  He has put a considerable amount of time and expense into this new business, hiring web developers and software designers to implement his ideas. *See Exhibit E.*  He continued developing Global Teach during the pendency of this matter up until January 30, 2020, when he was detainer.  Now Ms. Dickerson, his fiancé is helping to continue with Global Teach's development.

As the letters submitted detail, Armin is a kind and generous human, who shows his compassion to others.  As his fiancé Heather Dickerson explains, "*Armin is always concerned*

about people and how we can help make their lives better, not just our friends and families, but also those in the community and the world as a whole. Whether they need extra money, employment or want to make changes in their life, he always wants to assist any way we can. His business to help people learn languages is exemplary of this. He moved to the US with a bit more than conversational English, so wants to help provide opportunities for people throughout the world to follow their dreams and desires, as he did, and to do this at no cost to them." *See Exhibit A.*

Armin's generosity goes beyond giving money, as Ms. Dickerson goes on the explain, *"[w]hen Armin gives money to help a homeless person, he puts his hand on their shoulder, sometimes hugs them and says, 'God bless you'." See Id.*

Armin receives joy from helping others, and his business that he is starting, Global Teach, is a perfect example of that, as his best friend Altin Bardhoshi states. *See Exhibit B.*

## APPLICATION OF THE STATUTORY SENTENCING FACTORS TO THIS CASE

As Your Honor is well aware, pursuant to Title 18, United States Code, Section 3553(a), the Court shall impose a sentence sufficient, but not greater than necessary, to comply with the need for the sentence imposed. In this case, Your Honor must consider the following:

1. The nature and circumstances of the offense
2. The history and characteristics of the defendant
3. The need for the sentence imposed
   a. To reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense
   b. To afford adequate deterrence to criminal conduct
   c. To protect the public from further crimes of the defendant
4. The kinds of sentences available
5. The kinds of sentence and the sentencing range established by the guidelines
6. The need to avoid unwarranted disparities

The Nature and Circumstances of the Offense

Mr. De Goorte pleaded guilty to bank fraud and wire fraud charges, based on the following summary of conduct.

- In 2015, Mr. De Goorte was the owner of a non-profit company.  Between 2016 and 2018, the non-profit company received donations via credit card payments from seven individuals who did not authorize the charges.

- In 2019, a check for $3,000,000 written from one of Mr. De Goorte's bank accounts to the non-profit was deposited in the non-profit's bank account when the account it was written from had less than a $500 balance.

- Later that same year a check for $6,000,000, written under a company's corporate account to the non-profit, was deposited in the non-profit's bank account. The company did not authorize the check or donation and did not have the funds to cover the amount.

- In October of 2019, Mr. De Goorte utilized a flaw in business credit card processor's online system that allowed him to make charges on his credit card beyond the card's limit by continuously pressing the "enter" button repeatedly, which caused the charges to go through. The charges went to his non-profit company.

Mr. De Goorte has admitted his guilt and remorse for his conduct and has agreed with the government that an ***intended*** loss of over $9.5 million dollars resulted from his offenses. Mr. De Goorte further agreed that his conduct resulted in an ***actual*** loss of $447,641.70, and fully intends to make restitution to the financial entities who suffered the loss.

This is first time Armin was ever involved in any crime and been imprisoned. It has been and a very rude but beneficial awakening for him. Committing this fraud was the biggest mistake of his life, one he will regret as long as he lives. He is extremely apologetic to his friends, family, and the Court.

While this is a significant offense, as noted below, regarding the seriousness of the offense, it is not one that requires, or demands, further incarceration.

<u>History and Characteristics of Mr. De Goorte</u>

In support of Mr. De Goorte's history and characteristics, he has honestly informed Probation about his life. Mr. De Goorte's friend, family, and loved one have also spoken to Armin's character and have submitted several letters in support of this information. See *Exhibits A-C.*

The background noted above and in Exhibits A-C demonstrates the caring, loving, giving, and sharing person that is Armin De Goorte. It is apparent that Armin is extremely ashamed of his conduct, almost to his detriment. After his arrest and bail was set, Armin risked detainment rather than tell his friend and family that he had been arrested and provide a co-signer. On one hand, this behavior shows obstinance and stupidity, but on the other it shows a change in Armin. He has accepted reality and fate, hung his head in shame, and finally shared his current circumstances and mistakes with others.

The conduct which brings Armin before Your Honor does not represent who he is, or who he will be. As your Honor has likely seen many times, defendants can change significantly over the course of a case. The individual that appeared at their arraignment can be very different than the one at sentence.

<u>The Need for the Sentence Imposed To Promote Certain Statutory Objectives:</u>
<u>(A) to reflect the seriousness of the offense, (B) promote respect for the law, and (C) provide just punishment for the offense.</u>

      (A) <u>to reflect the seriousness of the offense</u>

      Section 3553(a)(2)(A) requires the judge to consider "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." [2] A sentence that is excessive in light of the seriousness of the offense promotes disrespect for law and provides unjust punishment. The purposes set forth in § 3553(a)(2)(A) are generally referred to, collectively, as "retribution," which has been defined as follows:

> First, retributive, or "just deserts" theory, considers only the defendant's past actions, not his or her probable future conduct or the effect that the punishment might have on crime rates or otherwise. Second, retribution examines the actor's degree of blameworthiness for his or her past actions, focusing on the offense being sentenced. . . . Third, the degree of blameworthiness of an offense is generally assessed according to two kinds of elements: the nature and seriousness of the harm caused or threatened by the crime; and the offender's degree of culpability in committing the crime, in particular, his degree of intent (mens rea), motives, role in the offense, and mental illness or other diminished capacity.

Richard S. Frase, <u>Excessive Prison Sentences, Punishment Goals, and the Eighth Amendment: "Proportionality" Relative to What?</u>, 89 Minn. L. Rev. 571, 590 (February 2005).

When looking at these factors, this Court should consider the following:
1. Mr. De Goorte accepts responsibility for his actions.
2. Mr. De Goorte's criminal culpability is diminished based on the following:
   a. He has expressed a clear willingness to repay the victims if he can maintain employment and do so incrementally.
   b. He was not motivated by malevolence, ill-will or greed. He did not live a lavish lifestyle, and did not profiteer significantly from his conduct.
   c. The disparity between actual loss amount and the intended loss is vast.
   d. The intended loss amount is so high not because of an intricate scheme or the acts of criminal mastermind, but rather it is the result of foolish, remedial acts that appear to have been performed with little to no thought.

---

[2] The Comprehensive Crime Control Act of 1984 makes probation a sentence in and of itself 18 U.S.C. § 3561. Probation may be used as an alternative to incarceration, provided that the terms and conditions of probation can be fashioned so as to meet fully the statutory purposes of sentencing, including promoting respect for law, providing just punishment for the offense, achieving general deterrence, and protecting the public from further crimes by the defendant. USSG, Chapter 5, Part B - Probation, Introductory Commentary.

    e.  Mr. De Goorte committed no violent act.
    f.  Mr. De Goorte has admitted guilt.
    g.  Mr. De Goorte is generally known as a humble, charitable and respected member of
       the community.

    Based on these factors, the Court must balance the seriousness of the offense with the need to provide just punishment and promote respect for the law. In this instance, Mr. De Goorte has accepted responsibility for his wrongs and has suffered hardship in prison. Mr. De Goorte takes this offense seriously and is deeply remorseful for his actions. The mental anguish caused by this prosecution is sufficient to discourage Mr. De Goorte from committing further crimes, and the three months of incarceration solidified respect for the law, provided just punishment, and adequately account for the serious nature of the offense.[3]

    Judges must consider *all* of "the kinds of sentences available" by statute, § 3553(a)(3), even if the "kinds of sentence . . . established [by] the guidelines" permit or encourage only prison. See Gall v. United States, 552 U.S. 38, 128 S. Ct. 586, 602 & n.11 (2007). The Court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation. 18 U.S.C. § 3582(a) (emphasis added).

    The Supreme Court in Gall recognized the substantial restriction of liberty involved in even standard conditions of probation, Gall, 552 U.S. 38, 128 S. Ct. 586, 595-96 & n.4 (2007), and that in some cases, "'a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing.'" Id. at 599 (quoting district court opinion). "It may very often be that release on probation under conditions designed to fit the particular situation will adequately satisfy any appropriate deterrent or punitive purpose." Id.

    Catherine  McVey, Chairman of the Pennsylvania Board of Probation and parole, echoes the reasoning in Gall, saying:

           So the issues for us are: Who should we incarcerate? How many
           people should we incarcerate? For how long should we incarcerate
           them? And when we think about that, we want to think about what
           are the objectives of incarceration? The alternative to incarceration is
           in part an outgrowth of our focus on outcomes. As we focus on
           outcomes, the emphasis begins to recede from an issue of pure
           punishment objective, and we begin to then transition to the thoughts
           of what works to change offender behavior.

---

[3] The three months Armin spent detained were far from ordinary.  He experienced the nearly two-week lockdown at MCC for the smuggling of a firearm, and then was transferred to MDC just before the Corona Virus appeared.  Both of these events caused extreme hardship on the inmates beyond losing all visitation and hindering normal communication with those outside.

*Proceedings from the Symposium on Alternatives to Incarceration* at 10 (July 14-15, 2008), available at http://www.ussc.gov/SYMPO2008/Material/02_FINAL_Overview %20of%20Alternative%20SentencingOptions.pdf

A sentence of time served followed by post release supervision reflects the seriousness of the offense, promotes respect for the law, and provides just punishment.

(B) to afford adequate deterrence to criminal conduct

Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, Purposes and Functions of Sentencing, 34 Crime & Just. 1, 28 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." Id.; see also Zvi D. Gabbay, Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime, 8 Cardozo J. Conflict Resol. 421, 447-448 (2007) (Certainty of punishment is empirically known to be a far better deterrent than its severity).

Typical of the findings on general deterrence are those of the Institute of Criminology at Cambridge University. See Andrew von Hirsch *et al.,* Criminal Deterrence and Sentence Severity: An Analysis of Recent Research (1999), summary available at http://members.lycos.co.uldlawnet. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European countries. Id. at 1. It examined the effects of changes to both the certainty and severity of punishment. Id. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." Id. at 2. The report concluded that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." Id. at 1. Research regarding white collar offenders in particular (presumably the most rational of potential offenders) found no difference in the deterrent effect of probation and that of imprisonment. See David Weisburd *et al.,* Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes, 33 Criminology 587 (1995); see also Gabbay, *supra,* at 44849 ("[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders."). According to "the best available evidence, . . prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen *et al.,* Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science, 91 Prison J. 48S, 50S-51S (2011).

Among low-risk offenders, those who spent less time in prison were four (4) percent less likely to recidivate than low-risk offenders who served longer sentences. Valerie Wright, Sentencing Project, Deterrence in Criminal Justice: Evaluating Certainty v. Severity of Punishment *7* (2010), available at http://www.sentencingproject.org/doc/Deterrence%20Briefing%20.pdf. Thus, when prison sentences are relatively short, offenders are more likely to maintain their ties to family, employers, and their community, all of which promote successful reentry into society. Id.

Conversely, when prisoners serve longer sentences they are more likely to become institutionalized, lose pro-social contacts in the community, and become removed from legitimate opportunities, all of which promote recidivism. Id.

Mr. De Goorte is a 40 years old, a first time offender, is starting a business, is engaged to be married, and has no history of drug abuse.  For all male offenders in Criminal History Category I, recidivism rates are 24.3%. For those between the age of 41 to 50 at the time of sentencing; however, the recidivism rate in Category I is only 6.9%. For those who have been employed, the rate is 12.7%; and for those who were ever married, the rate is 9.8%. For those with no history of illicit drug use, the recidivism rate is half that of those who do have a drug history. See U.S. Sent'g Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at Exh. 9, at 28; Exh. 10, at 29 (May 2004) [hereinafter Measuring Recidivism]. Finally, offenders like Mr. De Goorte with zero criminal history points have a rate of recidivism half that of offenders with one criminal history point. See Sent'g Comm'n, Recidivism and the "First Offender," at 13-14 (May 2004) [hereinafter First Offender].

The Commission has recognized the advisability of revising the guidelines to take age and first offender status into account. See First Offender at 1-2 (identifying goal of "refin[ing] a workable 'first-offender' concept within the guideline criminal history structure"); Measuring Recidivism at 16 (noting that "[o]ffender age is a pertinent characteristic" that would "improve [the] predictive power of the guidelines "if incorporated into the criminal history computation"). The Commission has not implemented any such revisions to the criminal history guidelines, but has recently stated that age "may be relevant" in granting a departure. USSG § 5H1.1.

In imposing the least sentence sufficient to account for the need to protect the public from further crimes of Mr. De Goorte, this Court should consider the statistically low risk of recidivism presented by Mr. De Goorte's history and characteristics. See, e.g., United States v. Darway, 255 Fed. Appx. 68, 73 (6th Cir. 2007) (upholding downward variance on basis of defendant's first-offender status); United States v. Hamilton, 323 Fed. Appx. 27, 31 (2d Cir. 2009) ("the district court abused its discretion in not taking into account policy considerations with regard to age recidivism not included in the Guidelines"); United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007) (affirming below-guideline sentence based on defendant's age, which made it unlikely that he would again be involved in a violent crime); United States v. Urbina, slip op., 2009 WL 565485, *3 (E.D. Wis. Mar. 5, 2009) (considering low risk of recidivism indicated by defendant's lack of criminal record, positive work history, and strong family ties); United States v. Cabrera, 567 F. Supp. 2d 271, 279 (D. Mass. 2008) (granting variance because defendants "with zero criminal history points are less likely to recidivate than all other offenders"); Simon v. United States, 361 F. Supp. 2d 35, 48 (E.D.N.Y. 2005) (basing variance in part on defendant's age of 50 upon release because recidivism drops substantially with age); United States v. Nellum, 2005 WL 300073 at *3 (N.D. Ind. Feb. 3, 2005) (granting variance to 57-year-old defendant because recidivism drops with age); United States v. Ward, 814 F. Supp. 23, 24 (ED. Va. 1993) (granting departure based on defendant's age as first-time offender since guidelines do not "account for the

length of time a particular defendant refrains from criminal conduct" before committing his first offense).

Mr. De Goorte has never been imprisoned before January 30, 2020. A term of time served followed by a period of supervised release will adequately deter Mr. De Goorte, and white-collar criminals generally from further criminal conduct. The fact that Mr. De Goorte was convicted of a white-collar, non-violent offense supports the proposition that a sentence of probation is sufficient to deter him and other from any future misconduct.

This Court, after considering the need to deter Mr. De Goorte through specific deterrence and others similarly situated individuals through general deterrence, should find that a sentence of probation is sufficient, but not greater than necessary based on the need to provide adequate deterrence.

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. De Goorte respectfully requests that this Court sentence him to a sentence of time served. Mr. De Goorte submits that this sentence provides appropriate consideration of the factors contained in <u>18 U.S.C. § 3553(a</u>) and is sufficient, but not greater than necessary to meet the statutory goals of sentencing.

Respectfully Submitted,


<u>/s/ James A. Schiff, Esq.</u>
*Counsel for Armin De Goorte*


cc: Andrew Rohrbach, AUSA

9